H. W. KELLY and Vera Kelly, by her next friend, H. W. Kelly, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 538–P.

United States District Court, N. D. Florida, Pensacola Division.

Jan. 21, 1955.

---

John B. Amos, Fort Walton, Fla., for plaintiffs.

G. Harrold Carswell, U. S. Atty., Tallahassee, Fla., by Hayford O. Enwall, Asst. U. S. Atty., Gainesville, Fla., for defendant.

DE VANE, Chief Judge.

A dangerously narrow two-lane bridge approximately 1,200 feet long is the only highway facility across Cinco Bayou, Highway No. 85, leading north from Ft. Walton to Eglin Field and beyond. The traffic is quite heavy over this road and bridge and since Eglin Field, just out of Ft. Walton, has been in operation many accidents have occurred on the bridge. The bridge approach at each end is approximately 15 feet above water. There is a rise in the bridge of 13 feet some 500 feet from the south end, to permit sizable boats to pass under the bridge to the upper reaches of the Bayou.

On the night of July 19, 1952, shortly after dark, an accident occurred on the bridge, near the top of the hump, between a one-half ton pickup truck operated by plaintiff, H. W. Kelly, and a one and one-half ton dual-wheel government truck operated by A 3/C John T. Perkinson. Plaintiff's wife, two children and two adult members of his family were in the truck operated by him. Several other Air Force personnel were in the government truck; three of whom, with the operator of the government truck, were

witnesses in the case. There were no eyewitnesses to the accident, save the persons in the two vehicles involved in the collision.

The testimony of the witnesses in each vehicle, as to how the accident happened is in irreconcilable conflict. The witnesses for each party to the suit places the truck in which he or she was riding completely in its lane of traffic and places the other truck over the center line of its lane of traffic. There is no possible way to reconcile this testimony. While the memory of some of the witnesses was poor and their testimony quite unsatisfactory, nevertheless, there is enough pertinent testimony on each side of the case that is worthy of consideration to make it impossible for the court to determine from this testimony where the truth lies. The court is, therefore, forced to a determination of the question of liability in this case upon other evidence offered in the case.

The evidence shows that defendant's truck was equipped with a cab and behind the cab the truck body protruded approximately 20 inches on each side and was equipped with rear dual wheels. The evidence further shows that plaintiff's front left fender collided with the body of defendant's truck behind the cab and defendant's truck scraped the truck plaintiff was operating all the way from the front to and including the rear fender. A mirror was attached to plaintiff's truck and this was knocked off by the body of defendant's truck and part of the mirror fell into the body of defendant's truck. Photographs were introduced by both parties showing the damage to the truck operated by plaintiff and where the trucks first came together. Little damage was done to defendant's truck.

In addition to this visual evidence, plaintiff called as a witness, O. L. Bengston, who was the Constable of the District of Okaloosa County, where the accident occurred. Mr. Bengston heard of the accident very shortly after it occurred and was on the scene within approximately thirty minutes. He testified that the accident occurred 489 feet north of the south end of the bridge. While he was not certain as to its location, with reference to the hump, there is other testimony in the record that the accident occurred only a few feet south of the top of the hump. Bengston further testified that skid marks of the dual wheels of defendant's truck were visible on the bridge when he arrived at the scene of the accident; that these skid marks were approximately 4 feet long and began 12 inches over the center line of the bridge. Bengston, in many respects, was a poor witness, easily confused on cross-examination, but he was not confused as to the point of the collision and as to the fact that said skid marks made by defendant's truck were still visible on the bridge when he arrived.

Defendant called as a witness one of its investigators sent to the scene of the accident more than two hours after it occurred. He located the point of the accident the same place where Bengston testified it occurred, but he testified that when he arrived on the scene he found no visible evidence of skid marks of either truck.

■ The second and equally convincing pieces of evidence offered in the case are the photographs of the trucks introduced by the parties. These photographs, when carefully analyzed, clearly show that defendant's truck, as it came over the hump, was over the center line of the bridge, in plaintiff's line of travel, and that in attempting to move the truck back into its line of travel, the operator got the front of the truck completely into its line of travel, but failed to get the rear of the truck out of plaintiff's line of travel before the collision occurred. It seems obvious to this court that had the defendant's truck been properly in its line of travel and plaintiff's truck over in to defendant's line of travel, that the collision would have either been head-on or the front of defendant's truck would have struck plaintiff's truck at the point where plaintiff's truck had failed to get out of defendant's line of travel. There is no evidence in the case even suggesting plaintiff veered to the left and struck

defendant's truck after the two trucks came abreast each other. The rule applied by the court here in determining which party is at fault in this accident is well supported by the decision of the Court of Appeals of Louisiana, Fifth Circuit, in Service Fire Insurance Company v. Dotson, La.App., 23 So.2d 699.

The court finds and holds from all the evidence in the case, that the negligence bringing about this accident lies with defendant and that plaintiff, H. W. Kelly, was free of any negligence on his part.

H. W. Kelly suffered serious damages as the result of this accident. His left arm was so severely injured that it is of little service to plaintiff and compelled him to abandon training for a plumber, which he expected to learn and follow. He was an apprentice plumber, earning, so he testified, approximately $60 a week, at the time of the accident, and expected to become a journeyman plumber within less than a year and anticipated enjoying the high rates of pay received by plumbers. His present earnings are approximately fifty percent of what he was earning as an apprentice plumber.

The testimony touching the extent of plaintiff's disability as the result of this accident shows that he is not more than fifty percent disabled and that there are good prospects in the future for him to earn more than he is now earning. These good prospects lie primarily in plaintiff's philosophy and attitude toward his disability. He indicated clearly that it is his determination not to let the injury defeat him in his efforts to earn a living for himself and family. Plaintiff was 27 years of age at the time of the accident, with a life expectancy of 40 years.

In addition to his injury, plaintiff incurred other losses. He was confined in a hospital for approximately 60 days and was totally disabled for a period of 32 weeks. He incurred medical expenses in the sum of $2,900 for himself and $226 for his minor child injured in the accident. Taking all these matters into consideration, the court finds and holds that plaintiff is entitled to recover of and from the defendant the sum of $25,000.

Plaintiff, Vera Kelly, a minor, was sitting in the rear of the truck with her mother, and when the trucks came together her arm was broken. She was quite young and her arm was promptly reset and she made a complete recovery. The court finds and holds that plaintiff, H. W. Kelly, as her father and next friend, is entitled to recover $1,000 for the injury she suffered.

Pursuant to the requirements of Title 28 U.S.C.A. § 2678, the court finds and holds that counsel for plaintiffs is entitled to an attorney's fee of 20 percent of the amount herein awarded, to be paid therefrom by plaintiffs.

An appropriate judgment will be entered herein in conformity with this memorandum decision.